IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FOREST RIVER, INC., )<br>      Plaintiff, )<br>)<br>vs. )<br>)<br>HEARTLAND RECREATIONAL VEHICLES, )<br>LLC, )<br>)<br>      Defendant. )<br>) | Case No.: 3:10-cv-011 TLS-CAN |

**DEFENDANT HEARTLAND RECREATIONAL VEHICLES, LLC'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF FOREST
RIVER, INC.'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Defendant Heartland Recreational Vehicles, LLC ("Heartland"), pursuant to Fed. R. Civ. P. 12(b)(6), respectfully submits the following Memorandum in Support of Motion to Dismiss Plaintiff Forest River, Inc.'s ("Forest River") Amended Complaint.

## I.    INTRODUCTION

The Amended Complaint attempts to state two claims against Heartland—a copyright infringement claim and an unfair competition claim. Although far from the model of clarity, the Amended Complaint appears to base both claims on the same alleged wrongful acts: (1) that Heartland used Forest River's RP-176 Floorplan to construct Heartland's MPG travel trailer, and (2) that Heartland included the RP-176 Floorplan in comparative advertising promoting the sale of Heartland's MPG travel trailer. Forest River's copyright infringement and unfair competition claims both fail as a matter of law and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

First, even if Heartland used the RP-176 Floorplan technical drawing to construct the MPG travel trailer, such use does not constitute copyright infringement. And, Forest River has

not alleged and cannot allege that Heartland's as constructed recreational vehicle, the MPG travel trailer, violates any copyright in Forest River's R.Pod recreational vehicle as an "architectural work" under the Architectural Works Copyright Protection Act ("AWPCA").  Indeed, "recreational vehicles" have been expressly excluded from copyright protection as "architectural works."  37 C.F.R. § 202.11(d).

Next, even if Heartland included the RP-176 Floorplan in its comparative advertising, such inclusion does not constitute copyright infringement because the RP-176 Floorplan is not protected by copyright, and in any case is the limited practical method to accurately represent the floorplans for Heartland's MPG and Forest River's RP-176 travel trailers.  Moreover, even if the RP-176 Floorplan is protected by copyright or other methods do exist to compare floorplans, Heartland's use of the RP-176 Floorplan in comparative advertising constitutes non-infringing fair use.

Finally, Forest River fails to state a claim for unfair competition because an unfair competition claim cannot be based on an allegation that the defendant copied, revised, or used a plaintiff's copyrighted work.

For all of these reasons, Forest River's Amended Complaint should be dismissed.[1]

## II.  APPLICABLE LEGAL STANDARD

The Supreme Court set forth the new standard for a Fed. R. Civ. P. 12(b)(6) dismissal motion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, ---U.S. ---, 129 S.Ct. 1937 (2009).  Under the new standard, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible

---

[1] A cause of action for contributory copyright infringement cannot exist in the absence of direct infringement.  *See Assessment Tech. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 644 (7th Cir. 2003) ("since there would thus be no direct infringement, neither would there be contributory infringement by WIREdata").  Therefore, Forest River's claim of contributory infringement against Heartland shares the fate of Forest River's direct infringement claims and should likewise be dismissed.

on its face." *Twombly*, 550 U.S. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*. at 556.

The *Twombly/Iqbal* analysis is a two-pronged approach.  *Iqbal*, 129 S.Ct. at 1950.  First, the Court determines which allegations in a complaint are merely conclusions not entitled to the assumption of truth.  *Id*. at 1949-50 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (*citing Twombly*, 550 U.S. at 555). Second, accepting the remaining allegations as true, the Court determines whether the complaint states a "plausible claim for relief"—a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 1950.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. at 1949 (where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief").  Once the mere legal conclusions (which are entitled to no consideration) are separated from the few factual allegations, it becomes clear that the Amended Complaint fails to state any claims for relief and should be dismissed.

### III.   ARGUMENT

**A.   The Use of Forest River's RP-176 Floorplan to Construct a Travel Trailer Does Not Violate Any Copyrights**

The manufacture of a useful article from a copyrighted technical drawing does not constitute copyright infringement.  *Niemi v. Am. Axle Mfg. & Holding Inc.*, 2006 WL 2077590, at *3 (E.D. Mich. July 24, 2006); *Gusler v. Fischer*, 580 F.Supp.2d 309, 315 (S.D.N.Y. 2008); *Nat'l Med. Care, Inc. v. Espiritu,* 284 F.Supp.2d 424, 433-436 (S.D. W.Va. Sept. 30, 2003).  This is true even in cases where a defendant uses copied or "derivative floorplans" based on the

3

copyrighted work in constructing the useful article. *See Niemi*, 2006 WL 2077590, at *4 (holding that "Plaintiffs' copyrights are not infringed by the use, use of copies, or use of derivatives of copies, of technical drawings to manufacture or use stabilizer benders, welders, or other machines as alleged in Plaintiffs' Complaint"); *Nat'l Med. Care, Inc.*, 284 F.Supp.2d at 433, 435-36 (holding that the copyright in a technical drawing does not prevent construction of "as-built structures, regardless of whether those structures have been built with reference to infringing copies…").

Here, Forest River relies on the allegation that "Heartland created derivative floorplans based on the RP-176 Floorplan and made travel trailers derived from that copied floorplan." (Am. Compl. ¶14). However, as clearly shown in the cases above, the use of technical drawings in the process of constructing a travel trailer is not copyright infringement as a matter of law. Therefore, the Court should dismiss Forest River's copyright infringement claim related to Heartland's alleged use of the RP-176 Floorplan in manufacturing the MPG travel trailer.

**B.     Heartland's Alleged Use of the RP-176 Floorplan in Comparative Advertising Is Non-Infringing Because It is One of Only a Few Ways to Visually Compare the Layout of the R.Pod and MPG Travel Trailers**

The idea-expression dichotomy limits the scope of copyright protection. "[P]rotection is given only to the expression of the idea—not to the idea itself." *Eagle Servs. Corp. v. H20 Indus. Servs., Inc.*, 2005 WL 2406041, at *5 (N.D. Ind. Sept. 28, 2005) (quoting *Mazer v. Stein*, 347 U.S. 201, 217 (1954)). The merger doctrine also denies copyright protection when "'there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself.'" *Eagle Servs. Corp.*, 2005 WL 2406041, at *6 (quoting *Kregos v. Associated Press*, 937 F.2d 700, 705 (2d. Cir. 1991)). And, the doctrine of scenes a faire further bars copyright protection when the features of the expression allegedly copied are

4

"'so rudimentary, commonplace, standard, or unavoidable that they do not serve to distinguish one work within a class of works from another.'" *Gaiman v. McFarlane*, 360 F.3d 644, 659 (7th Cir. 2004) (quoting *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 929 (7th Cir. 2003)). When applying these two related doctrines, "[t]he question…is not how many alternatives actually exist; rather, it is 'whether other options practically exist under the circumstances.'" *Eagle Servs. Corp.*, 2005 WL 2406041, at *6 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 535 (6th Cir. 2004)).

The use of two-dimensional floorplan drawings is the standard method of communicating the interior layout of travel trailers to customers.  Indeed, this standard method of communication is demonstrated by the Amended Complaint which alleges that the RP-176 Floorplan was part of "a larger work entitled 'R.Pod Proudly Introduces Two Exciting 'New' Floorplans!!!'" (Am. Compl. ¶ 9.)   The reason is simple: a floorplan drawing is the practical mechanism to represent the layout of a travel trailer in a two dimensional format.  While a written description could be printed on a page, viewers will not form the same mental picture of the interior layout based on that description—the picture (drawing) is worth a thousand words.  As such, the use of a two-dimensional drawing is truly only one of so few ways of expressing the idea of the layout of the R.Pod and MPG travel trailers. *Eagle Servs. Corp.*, 2005 WL 2406041, at *6.

Because the features of an accurately scaled two-dimensional floorplan drawing will be dictated by the physical features of the actual product itself, a draftsman will have little leeway in creating the drawing.  For example, the draftsman cannot choose where to place the door, nor can it choose how large or how small to render certain rooms.  Indeed, the exercise of creativity would destroy the accuracy of the drawing's representation of the travel trailer's layout.  Accuracy is the purpose for floorplan drawings, not artistry.  Because the actual arrangement and

5

features are dictated by the physical appearance and reality of the R.Pod. and MPG travel trailers, it is unsurprising that a two-dimensional drawing conveying the same idea will be substantially similar. As such, the doctrine of merger precludes copyright protection for the the RP-176 Floorplan.

Similarly, the related doctrine of scenes a faire also bars the RP-176 Floorplan from copyright protection. The actual idea for the layout cannot be copyrighted due to the idea-expression dichotomy, and the need for technical accuracy requires the draftsman to place certain items in certain places. What is left, then, are extremely elementary choices—such as the thickness of the lines representing the walls in the technical drawing—that are "so rudimentary, commonplace, standard, or unavoidable that they do not serve to distinguish one work within a class of works from another." *Gaiman*, 360 F.3d at 659. The rudimentary nature of these choices directs that the RP-176 drawing does not enjoy copyright protection.

Under the doctrines of merger and scenes a faire, the RP-176 Floorplan is not protected by copyright and the copyright claims in the Amended Complaint should be dismissed.

C.  **Heartland's Alleged Use of the RP-176 Floorplan in Truthful Comparative Advertising is a Non-Infringing Fair Use**

The Copyright Act provides that the "fair use of a copyrighted work…is not an infringement of copyright." 17 U.S.C. § 107. Even if the Court finds that the very rudimentary choices made in creating the RP-176 Floorplan are sufficient to justify some degree of copyright protection, such minimal creativity and minimal protection supports a finding that Heartland's alleged use of the drawing in its comparative advertising is a fair use.

In determining whether a party's use of a copyrighted work constitutes fair use, courts consider at least four factors expressly set forth in the Copyright Act:

6

>   (1)   The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
>   (2)   The nature of the copyrighted work;
>
>   (3)   The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
>   (4)   The effect of the use upon the potential market for or value of the copyrighted work.

*Id.* A court's analysis of these factors "is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis…Nor may the four statutory factors be treated in isolation, one from another.  All are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78 (1994).

Forest River alleges that Heartland "copied the RP-176 Floorplan into its advertisements for competing travel trailers…[and] used those advertisements…to solicit business from dealers of Forest River travel trailers and from others."  (Am. Compl. ¶14.)  Applying the four statutory factors to the allegations contained in the Amended Complaint demonstrates that use of the rudimentary RP-176 Floorplan in truthful comparative advertising is a permissible fair use.  As such, Forest River's copyright infringement claims related to Heartland's use of the RP-176 Floorplan in comparative advertisements should be dismissed.

> **1.   Heartland's alleged use of the RP-176 Floorplan truthfully informs consumers about the parties' products.**

Under the first fair-use factor, courts consider "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1).  While the bare language of Section 107(1) suggests that commercial use of a copyright might weigh against a finding of fair use, the United States Supreme Court has

7

warned courts not to "confin[e] [their] treatment of the first factor essentially to one relevant fact, the commercial nature of the use." *See Campbell*, 510 U.S. at 583-84 (finding error in "virtually dispositive weight" Court of Appeals gave to commercial nature of use).  Instead, the "central purpose" of analyzing the first factor "is to see…whether the new work merely 'supercede[s] the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words whether and to what extent the new work is 'transformative.'" *Id.* at 579 (internal citations omitted).  "[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Id.*

By combining the RP-176 Floorplan with several other informative elements in its advertisement, Heartland creates a completely different purpose and meaning.  Standing alone, the RP-176 Floorplan merely says: "these are the dimensions and layout of the Forest River R.Pod."  (*See* Am. Compl., Exhibit 1.)  But when combined with the other elements contained in Heartland's advertisement, (*see* Am. Compl., Exhibit 2), the resulting work presents an entirely different message: "The Forest River R.Pod and the Heartland MPG have the same dimensions and the same layout, yet the MPG provides over a dozen additional feature advantages for the same price."  The transformative effect of Heartland's use of the RP-176 Floorplan weighs heavily in favor of a finding of fair use.  *Campbell*, 510 U.S. at 579.

Furthermore, Heartland's advertisement is of a type that Courts have consistently championed as beneficial to a free market society.  *See, e.g., Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 764, 765 (1976) (noting the "strong interest in the free flow of commercial information" and that "[i]t is a matter of public interest that [consumer] decisions in the aggregate, be intelligent and well informed.").  Indeed, the

8

"public interest in comparative advertising is well-recognized" and courts have found that where an alleged infringement occurs in a comparative advertisement, the need for well-informed consumers weighs heavily in favor of a finding of fair use. *Triangle Publ'ns*, *Inc. v. Knight-Ridder Newspapers, Inc.*, 626 F.2d 1171, 1176, n. 13 (5th Cir. 1980) (noting that "the fact that the commercial use occurred in the course of a truthful comparative advertisement undercuts the significance of the commercial nature of the use" and finding that use of image of copyrighted magazine cover in comparative advertising constituted fair use); *see also Sony Computer Entm't Am. Inc. v. Bleem, LLC*, 214 F.3d 1022, 1027 (9th Cir. 2000) (finding that comparative advertising weighs in favor of fair use because it "redounds greatly to the purchasing public's benefit with very little corresponding loss to the integrity of [the] copyrighted material.").

Because Heartland's use of the RP-176 Floorplan allows consumers to make better-informed purchases, the first factor weighs in favor of a finding of fair use.

### 2. The utilitarian nature of Forest River's RP-176 Floorplan favors a finding of fair use.

The next factor to consider is "the nature of the copyrighted work." 17 U.S.C. § 107(2). "This factor calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586.

As discussed, Forest River's RP-176 Floorplan is a product of low creativity. Furthermore, the RP-176 Floorplan is a mere compilation of facts—a recordation of the placement of elements and features of Forest River's R.Pod product. *See* 17 U.S.C. § 101 (defining compilation as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.") As the Supreme Court has noted,

9

"[i]n general, fair use is more likely to be found in factual works than in fictional works." *Stewart v. Abend*, 495 U.S. 207, 237 (1990); *see also Campbell*, 510 U.S. at 586 (collecting cases demonstrating greater copyright protections for creative as opposed to factual works).

Because the RP-176 Floorplan is at best a work of minimal creativity representing facts, the second factor weighs heavily in favor of a finding of fair use.

### 3. Heartland's use of the RP-176 Floorplan allowed customers to compare the travel trailer products more easily.

The third factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3).

Here, the Amended Complaint does not allege that Heartland used the entire larger work entitled "'R.Pod Proudly Introduces Two Exciting 'New' Floorplans!!!'" but rather the RP-176 Floorplan. (See Am. Compl. ¶ 9.)   Moreover, the allegedly infringing advertising attached to the Amended Complaint shows that Heartland's use of the RP-176 Floorplan communicates the comparative message that the interior layout of Heartland's MPG travel trailer is the same as the interior layout of the Forest River R.Pod travel trailer.  By using the identical image to represent both the MPG product and the R.Pod product, the customer could instantly comprehend that the interior layouts of the products were the same.  As such, Heartland's alleged use of the RP-176 Floorplan in its comparative advertisement actually decreases the possibility of consumer confusion and facilitates consumer comprehension and knowledge.

This factor, likewise, weighs in favor of a finding of fair use.

### 4. There is no stand alone market for the RP-176 Floorplan.

The fourth and final factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The United States Supreme Court has stated that "[t]his last factor is undoubtedly the single most important element of fair use." *Harper & Row*

10

*Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 566 (1985). This factor weighs overwhelmingly in favor of Heartland here.

What matters for purposes of Forest River's claim is whether the use of the RP-176 Floorplan in Heartland's comparative advertisement affected the market for the RP-176 Floorplan drawing *itself*. "Fair use, when properly applied, is limited to copying by others which does not materially impair the marketability *of the work which is copied*." *Id.* at 566-67 (quoting 1 Nimmer § 1.10[D], at 1-87) (emphasis added); *accord Sony Computer Entertainment Am., Inc.*, 214 F.3d at 1029 ("The market cannot be the videogames themselves because it is the emulator that competes in that niche, not the screen shots that adorn the emulator's advertising."); *Triangle Publ'ns, Inc.*, 626 F.2d at 1177-78.

Forest River does not allege that it is in the business of creating, selling, and licensing floor plan designs like the RP-176 Floorplan—rather, "Forest River is, among other things, in the business of manufacturing and selling travel trailers." (Am. Compl. ¶ 6). Furthermore, because manufacturers are free to use any ideas within Forest River's floorplans in their own travel trailer products, there is no need for other manufacturers to seek a license to use such floorplans. As a result, no market exists for Forest River's RP-176 Floorplan. In the absence of any commercial market for the RP-176 Floorplan, Forest River cannot show damage to the potential market for that work.

All four fair use factors weigh in favor of Heartland and direct that Heartland's alleged use of the RP-176 Floorplan in its comparative advertising was a fair use. As such, even taking any well-pled allegations in Forest River's Amended Complaint as true, the Court should dismiss Forest River's copyright infringement claim under the doctrine of fair use.

11

D.   **Forest River Cannot Base An Unfair Competition Claim on Heartland's Alleged Copyright Infringement**

Finally, Forest River's Amended Complaint contains a half-hearted reference to unfair competition, but does not identify the nature of that unfair competition. Regardless of its nature, the Amended Complaint fails to allege facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. If Forest River is attempting to state a claim of trademark infringement, it has failed to identify the mark that Heartland has infringed. If Forest River is attempting to state a claim for false advertising, it has not identified any false or misleading statement made by Heartland.

Forest River's Amended Complaint indicates that Forest River may be basing its unfair competition claim on Heartland's allegedly "infringing advertisements" and "infringing travel trailers." (*See* Am. Compl. ¶ 21.) To the extent that Forest River contends that Heartland's alleged copyright infringement also constitutes unfair competition, such claims have been rejected by the United States Supreme Court. In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, the Court clarified that the phrase "origin of goods" in the Lanham Act refers to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."[2] 539 U.S. 23, 37 (2003). "*Dastar* made it clear that there is no Lanham Act claim for copying, revising, and using a copyright-able work. Such claims exist if at all under copyright law." *Francois v. Jack Ruch Quality Homes, Inc.*, 2006 WL 2361892, at *13 (C.D. Ill. Aug. 13, 2006). Because the analysis of a trademark infringement claim under state common law is identical to that used to adjudicate Lanham Act claims, the *Dastar* decision also requires dismissal of any state law trademark infringement claim based on Heartland's alleged copyright infringement. *See CFM Majestic, Inc. v. NHC, Inc.*, 93

---

[2] Heartland, not Forest River, is the origin of the tangible MPG travel trailer that Heartland offers for sale.

F.Supp.2d 942, 951 n. 20 (N.D. Ind. 2000) ("The analysis under the Lanham Act for trademark infringement and unfair competition also applies to claims of unfair competition under Indiana common law."). Therefore, the Court should dismiss any claims of unfair competition under federal and state law.

## IV.    CONCLUSION

For the foregoing reasons, Heartland respectfully requests that the Court grant this Motion and dismiss all claims contained in Forest River's Amended Complaint, including:

(1)    Any claim for copyright infringement based on Heartland's use of the RP-176 drawing to construct its MPG travel trailer;

(2)    Any claim for copyright infringement based on Heartland's use of the RP-176 drawing in its comparative advertising;

(3)    Any claim for contributory infringement against Heartland; and

(4)    Any claim for unfair competition under federal or state law.

Respectfully submitted,

BAKER & DANIELS LLP

By:   <u>*/s/ David P. Irmscher*</u>
    David P. Irmscher (#15026-02)
    Brad R. Maurer (#21730-49)
    Peter A. Meyer (#27968-53)
    111 East Wayne, Suite 800
    Fort Wayne, Indiana  46802
    Tel: 260.424.8000
    Fax: 260.460.1700
    david.irmscher@bakerd.com
    brad.maurer@bakerd.com
    peter.meyer@bakerd.com

*Attorneys For Defendant, Heartland Recreational Vehicles, LLC*

## CERTIFICATE OF SERVICE

The undersigned counsel for defendant Heartland Recreational Vehicles, LLC, hereby certifies that a copy of the foregoing was served upon the following, this 26th day of March, 2010, by operation of the Court's ECF System.

    Ryan M. Fountain
    420 Lincoln Way West
    Mishawaka, Indiana  46544-1902
    ryanfountain@aol.com

    *Attorney for Plaintiff,*
    *Forest River, Inc.*

    BAKER & DANIELS LLP

    <u>*/s/ David P. Irmscher*</u>
    David P. Irmscher