# UNITED STATES DISTRICT COURT
Northern District of Indiana
South Bend Division

| | |
|---|---|
| FOREST RIVER, INC., ) | |
|       Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 3:10-cv-011 TLS-CAN |
| ) | |
| HEARTLAND RECREATIONAL ) | |
| VEHICLES, LLC, ) | **JURY DEMAND** |
|       Defendant. | |

## FOREST RIVER'S RESPONSE IN OPPOSITION TO HEARTLAND'S MOTION TO DISMISS (DE#9)

Once again, Heartland has filed a motion to dismiss under Rule 12(b)(6) rather than answer the claims made against it. In fact, during two and a half years of litigation and over three lawsuits in this Court between these parties,[1] Heartland has NEVER answered any of the pleadings, continuously maintaining the pendency of motions to dismiss. Once again, Heartland's motion is without merit.

The Standard of Review under Rule 12(b):

Fed. R. Civ. P. 12(b)(6) permits a defendant, like Heartland, to move to dismiss "for failure to state a claim upon which relief can be granted." In doing so, however, the movant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Carter v. Honeywell Intern., Inc.,* 2009 WL 2750255, *1 (N.D. Ind. 2009); *Conley v. Gibson*, 355 U.S. 41, 45-

---

[1] Case Nos. 3:08-cv-490 TLS-CAN, 3:09-cv-302 JVB-CAN, 3:10-cv-11 TLS-CAN

1

6 (1957); *GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F. 3d 1112, 1114 (7th Cir. 1995). In that regard, however, the complaint must provide factual allegations that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007). Heartland argues in its Memorandum (DE#10, at pages 2-3) that the recent U. S. Supreme Court rulings in *Ashcroft v. Iqbal*, --- U.S.— , 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009) and *Bell Atlantic Corp. v. Twombly, supra*, set forth the only "Applicable Legal Standard" for this motion. Therefore, a thorough understanding of the actual current rule of law is useful in considering this motion.

> According to the court in *Ashcroft* (internal citations omitted):
>
> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than sheer possibility that a defendant has acted unlawfully. . . .
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw upon its judicial experience and common sense. . .
> . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

While some have characterized the *Twombly* ruling as a "new standard" or as dramatically altering the legal landscape, the Court of Appeals for the Seventh Circuit has cautioned:

> Since *Bell Atlantic,* we cautiously have attempted neither to over-read nor to under-read its holding. We have stated that the Supreme Court in *Bell Atlantic* "retooled federal pleading standards," and retired "the oft-quoted *Conley* formulation." *Killingsworth,* 507 F.3d at 618-19 (quoting *Bell Atlantic,* 127 S.Ct. at 1968 (quoting *Conley,* 355 U.S. at 45-46, 78 S.Ct. 99)). We also have cautioned, however, that *Bell Atlantic* "must not be overread." *1083 *Limestone Dev. Corp. v. Vill. of Lemont, Ill.,* 520 F.3d 797, 803 (7th Cir.2008). Although the opinion contains some language that could be read to suggest otherwise, the Court in *Bell Atlantic* made clear that it did not, in fact, supplant the basic notice-pleading standard. *Bell Atlantic,* 127 S.Ct. at 1973 n. 14 (expressly disclaiming the establishment of any "heightened pleading standard"; *see also Lang v. TCF Nat'l Bank,* 249 Fed. Appx. 464, 466-67 (7th Cir.2007) (noting that notice-pleading is still all that is required); *Limestone,* 520 F.3d at 803 (same). A plaintiff still must provide only "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Lang,* 249 Fed.Appx. at 466 (citing *Bell Atlantic,* 127 S.Ct. at 1964) (internal quotation marks and ellipses omitted). . . .
>
> In *Concentra*, we described the Supreme Court's *Bell Atlantic* opinion as establishing "two easy-to-clear hurdles" for a complaint in federal court:
>
>> First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court. . .
>
> Additionally, *Bell Atlantic*'s explicit praise of Form 9 of the Federal Rules of Civil Procedure illustrates that conclusory statements are not barred entirely from federal pleadings. The Court noted that a complaint of negligence in compliance with Form 9 provides sufficient notice to defendants, even though it alleges only that the defendant, on a specified date, "negligently drove a motor vehicle against plaintiff who was then crossing [an identified] highway." *Bell Atlantic,* 127 S.Ct. at 1977; *see also Iqbal v. Hasty,* 490 F.3d 143, 156 (2d Cir.2007). To survive dismissal at this stage, the complaint need not state the respects in which the defendant was alleged to be *1085 negligent (i.e., driving too fast, driving drunk, etc.), although such specificity certainly would be required at the summary judgment stage. *Bell Atlantic,* 127 S.Ct. at 1977; *Iqbal,* 490 F.3d at 156. In these types of cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense.

*Tamayo v. Blagojevich*, 526 F. 3d 1074, 1082-85 (7th Cir. 2008).

Accordingly, it remains the law that a Rule 12(b)(6) motion "tests the sufficiency of the complaint and not the merits of the suit." *Thompson v. BAC Home Loans Servicing,* L.P., 2010 WL 1286747, *1 (N.D. Ind. 2010); *Connolly v. First Personal Bank,* 623 F. Supp. 2d 928, 929 (N.D. Ill. 2008)(citing *Autry v. Northwest Premium Serv., Inc.*, 144 F. #d 1037, 1039 (7th Cir. 1998). The court must accept as true all well-pleaded factual allegations in the complaint as well as all of the factual inferences which can be reasonably drawn from them. *Jackson v. E.J. Brach Corp.,* 176 F. 3d 971, 977-8 (7th Cir. 1999); *Thompson, supra; Opportunity Knocks, Inc. v. Maxwell,* 618 F. Supp. 2d 920, 923 (N.D. Ind. 2009). "Furthermore, a complaint need not set forth all relevant facts or recite the law" and "a plaintiff is not limited to or bound by the legal characterizations of his claims contained in the complaint." *Opportunity, supra.* Instead, the plaintiff must be given the benefit of imagination, so long as the hypotheses are consistent with the complaint. *Bissessur v. Indiana Univ. Bd. of Trustees,* 581 F. 3d 599, 602-3 (7th Cir. 2009); *Sanjuan v. Amer. Bd. Of Psychiatry and Neurology, Inc.*, 40 F. 3d 247, 251 (7th Cir. 1994)("matching facts against legal elements comes later"). As such, a plaintiff is not required to plead facts which establish each and every element of the cause of action. *Furstperson, Inc. v. Iscopia Software, Inc.,* 2009 WL 2949777 *2 (N.D. Ill. 2009).

Apart from the complaint itself, in deciding a motion to dismiss under Rule 12(b)(6), a court may properly consider documents referenced in the complaint and relied upon by the parties. *Minch v. City of Chicago,* 486 F. 3d 294, 300 n.3 (7th Cir. 2007); *Carter v. Honeywell, Intern., Inc., supra.* In addition, when confronted with a motion to dismiss, a plaintiff may posit facts in opposition to the motion which, as long as the facts are consistent with the complaint, the Court must also accept as true. *See, Chavez v. Illinois State Police,* 251 F. 3d. 612, 650 (7th Cir. 2001); *Trevino v. Union*

*Pacific Railroad Co.,* 916 F. 2d 1230, 1239 (7th Cir. 1990); *Patriot Homes, Inc. v. Forest River, Inc.,* 2006 WL 1752143 *3 (N.D. Ind. 2006), *rev.d on other grounds,* 512 F. 3d 412 (7th Cir. 2008).

Analysis of the Present Motion:

    1. First, Heartland asserts (DE#10, at page 4) that:

> "the use of technical drawings in the process of constructing a travel trailer is not copyright infringement as a matter of law," and
>
> since "Forest River relies upon the allegation that 'Heartland created derivative floor plans based upon the RP-176 Floorplan and made travel trailers derived from that copied floorplan,'"

then the Court should dismiss Forest River's copyright infringement claim related to Heartland's alleged use of the RP-176 Floorplan in manufacturing the MPG travel trailer.

    Heartland's analysis of the law is both flawed and incomplete. While it may be true that the <u>mere</u> "manufacture of a useful article from a copyrighted technical drawing does not constitute copyright infringement," where, <u>instead</u>, the copyright in technical drawing is infringed by first copying that drawing and then the copy is used for the manufacture of a useful article, there is copyright infringement with respect to the useful article. This intermediate step is the "separate act of infringement" referred to in the foremost copyright law treatise, Nimmer on Copyright, 2009, at §2.08[D][2][b], page 2-124. See Appendix A[2].

---

[2] Given the relative complexity of the legal issues involved here and for the sake of brevity in this Response, Forest River commends to the Court the entire analysis set forth in the Appendix. That treatise has often been relied upon by courts as authoritative in this area of law. *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F. 3d 1218, 1228, fn 8 (11th Cir. 2008)

This aspect of copyright law, infringement of two-dimensional works by derivative creation of three dimensional useful articles is not new.  The original "leading case" on limitation of derivative rights into useful articles was *Baker v. Sheldon*, 101 U.S. 99 (1879).  Briefly, copyright protection was limited to copying of the drawing, but not copying of the useful article set forth in the drawing.  Since that time, however, a well-established body of law has arisen which provides for protection of technical drawings showing useful articles, particularly floor plans.  Where the copyrighted drawing is itself copied and that copy is then used to create useful articles, the copyright infringement will support both:

    a.    an injunction against manufacture of the useful articles, *Herman Frankel Organization v. Tegman*, 367 F. Supp. 1051, 1053 (D.C. Mich. 1973)("A person cannot, by copyrighting plans, prevent the building of a house similar to that taught by the copyrighted plans . . A person should, however, be able to prevent another from copying copyrighted house plans and using them to build the house"),

    b.    an award of damages determined by the profit value of the useful articles constructed using the copyrighted drawings, *Robert R. Jones Associates, Inc. v. Nino Homes*, 858 F. 2d 275, 280-1 (6th Cir. 1988)("the rule that emerges from these cases is that one may construct a house which is identical to a house depicted in copyrighted architectural plans, but one may not directly copy those plans and then use the infringing copy to construct the house. . . Accordingly, the measure of damages in this case is the profits [the plaintiff] would have made on the houses"); *Patriot Homes, Inc., v. Forest River Housing, Inc.* 2006 WL 17522143, *8 (N.D. Ind. 2006), *vacated and remanded on other grounds*, 512 F. 3d. 412 (7th Cir. 2008).

Indeed, "nothing in *Baker v. Sheldon* prevents such a copyright from vesting the law's grant of an exclusive right to make copies of the copyrighted plans so as to instruct a would-be builder on how to proceed to construct the dwelling pictured." *Imperial Homes Corp. v. Lamont*, 458 F. 2d 895, 899 (5th Cir. 1972).

*Nat'l Med. Care, Inc. v. Espiritu*, 284 F. Supp. 2d 424 (S.D. W. Va. 2003), relied upon by Heartland, acknowledges this rule of law in the reverse: "most courts agree that copying a structure depicted in plans, without copying the plans themselves, is not copyright infringement." *Id.,* at 435. In the present case, however, we do have exactly that: Heartland copied the copyrighted plans themselves and then used them to build the travel trailers shown in the plans. DE#4 at §14.[3]

Accordingly, the travel trailers made using the copy of the copyrighted floorplan are indeed an important part of this case since they evidence the infringement and provide a measure of the damages which may be due to Forest River on account of the infringement. Further, the "use of the RP-176 Floorplan," apart from the travel trailers made by that use, is by definition a measure of the value of the derivative floorplans made by Heartland from copying the copyrighted floorplans. Heartland has cited absolutely no case law to support the proposition that the "use" *per se* of a copied

---

[3] Beyond its claim based upon this "separate act of infringement," Forest River's pleadings also recited facts which support the "physical or conceptual separability" exception to the useful article prohibition, as discussed in another of the cases Heartland relies upon, *Gusler v. Fischer*, 580 F. Supp. 2d 309, 315-16 (S.D. N.Y. 2208). For example, the "original material" set forth in the pleadings, DE#4 at §8, and identified in the Certificate of Registration are protectable as design elements. Further, as explained by Nimmer, supra at pages 2-123 -126, Forest River's pleadings set forth facts sufficient to support a plausible argument for copyright protection against "construction *simpliciter"* using its floorplans under pre-1978 common law and statutory copyright.

drawing is not an infringement.[4]

2. Heartland attempts to make out two defenses against Forest River, one under the doctrines of "merger and scenes a faire," DE#10 at pages 4-6, and another under the "fair use" doctrine, DE#10 at pages 6-11.  Briefly, these arguments are intrinsically flawed because they rely upon facts not in the pleadings and for which no evidence has been provided.  Further, there is evidence in the pleadings which contradicts the "facts" alleged, and Forest River submits herewith samples of evidence which would be available to refute any such evidentiary submissions by Heartland.

For example, Heartland alleges as a fact that there are "only a few ways to visually compare the layout of the R.Pod and MPG travel trailers." DE#10 at page 4.  What is the evidence of that?  Nothing is in the pleadings to that effect, and common sense dictates the reverse is true.  Heartland could have compared the layouts by any number of types of photographs or by drawings Heartland itself made from an inspection of the actual trailers.  Those drawings could have been set up as plan views or perspective views, and those drawings could have been made with color enhancements.  See, for example, Exhibit 6[5] (Jayco overhead "top-to side" perspective view of 16 foot travel trailer)[6], Exhibit 7 (Keystone photographic layout of small travel trailer)[7], and Exhibit 8 (Heartland's

---

[4] Forest River has not pled that Heartland built the MPG trailers using one of Forest River's prints of the RP-176 Floorplan.  Instead, the pleadings allege that Heartland created derivative floorplan drawings and that those derivative drawings were used by Heartland.

[5] Although #6 is the first Exhibit provided in this document, Forest River has adopted a consecutive exhibit numbering system for all filings.  Thus, confusion from one motion to the next may be avoided in the aggregate reference to exhibits.

[6] This drawing is shown in color at http://www.jayco.com/php/products/floorplans.php?id=200, but is reprinted herein in black and white format due to data file size constraints presently experienced by the undersigned in

own color-enhanced perspective top plan view drawing for one of its Landmark brand travel trailers)[8].

Heartland also alleges as a fact that "the use of two dimensional floorplan drawings is the standard method of communicating the interior layout of travel trailers to customers." DE#10 at page 5. Again, there is no evidence of this in the record. To the contrary, there are many instances of RV manufacturers communicating layout instead by photographs. Exhibit 7. Certainly, floorplan drawings are one way of so communicating, but is that the "standard method" any more? Even if it is, there are many different ways to create a two dimensional drawing of a travel trailer's floorplan. Copying Forest River's method was not dictated by any necessity shown in the record.

Heartland alleges as a fact that "a draftsman will have little leeway in creating the drawing." Again, there is no evidence of this in the record. Common sense virtually screams incredulity at such an assertion. Exhibits 6-8 give credence to common sense.

Heartland alleges as a fact that "accuracy is the purpose of floorplan drawings, not artistry." Again, there is no evidence of this in the record. Common sense would suggest that the purpose of a floorplan drawing used in advertisements is to make the floorplan look attractive. Certainly, reference to Exhibit 8 would demonstrate that Heartland could have saved money and time with its own floorplans for other products by making them in black and white rather than colorized to show perspective. Presumably, the extra effort beyond black and white had a purpose.

---

electronic filing (improvement in that filing problem is pending).

[7] This photograph is shown enlarged an in color at http://keystonerv-bullet.com.

[8] This drawing is shown enlarged and in color at
http://www.heartlandrvs.com/models.html?model_id=1&id=1&name=Landmark&type=Luxury+Fifth+Wheel

Similarly, when arguing that its copying of the copyrighted floorplan was "fair use," Heartland baldly asserts as fact:

1. "By combining the RP-176 Floorplan with several other informative elements in its advertisements, Heartland creates a completely different purpose and meaning . . the Forest River R.Pod and the Heartland MPG have the same dimensions and the same layout,"

2. "Heartland's use of the RP-176 Floorplan allows consumers to make better-informed purchases,"

3. "Forest River's RP-176 Floorplan is a product of low creativity,"

4. "The consumer could instantly comprehend that the interior layouts are the same," and

5. "No market exists for Forest River's RP-176 Floorplan."

Again, there is no evidence that compels those factual conclusions in the pleadings. Consumer impressions are critical to the truth of items 1, 2, and 4. Common sense dictates that the truth of items 1, 2, and 4 depend upon whether or not the MPG product is actually the same as the R.Pod product. If they are not the same in any significant way, then the "purpose and meaning" of the Heartland copy is to deceive consumers and lure them into a worse-informed purchase. The evidence in the record from Exhibit 2 to the Amended Complaint and even Heartland's arguments in the motion point to many ways, from layout dimensions to specific features, that the actual products are not actually the same in terms of either dimensions and layout (note, for example, the length, height, and the cargo capacity).

Further, as to relative creativity, Heartland has nothing to offer other than attorney argument. Common sense suggests that someone had to have some measure of creativity since the drawings

10

themselves are not within the ability of an average person to create instantly (the Court may wish to measure the time needed for itself to think up a floorplan layout and create that type and quality of drawing).  Also, Exhibits 6 and 8 alone instantly show that vast differences can exist between floorplan drawings, so that no conclusions about lack of creatively are warranted out of thin air.

As to a "market" for the copyrighted floorplan, Heartland takes the word out of context.  The factor to consider is "market for *or value of*."  At a minimum, that the RP-176 Floorplan has value is shown by the fact that Heartland used it instead of creating its own drawings for the comparative advertisement.  Moreover, the value of that head start in creating the comparative advertisement must be measured by the events in the time span of its creation.  In particular, as alleged in the pleadings, DE#4 at §15, Heartland made this copy for use at the Louisville RVIA trade show, the most important trade show of the industry.  Common sense suggests that if Heartland had to create its own drawings in time for that trade show, it might not have been ready in time, and thereby might have missed a valuable window of opportunity to get its "message" across to potential customers.

Under Rule 12(b)(6) the court is required to draw all inferences in favor of Forest River. Common sense suggests reasonable alternative interpretations of the facts do exist from which those inferences can be drawn (and Exhibits 6-8 show that these common sense suggestions are not devoid of reality) at least against certain of the allegations made by Heartland.  As to the other allegations needed to support its defenses, there is simply no evidence in the record at all.  Mere conjecture by Heartland fills no gaps.  Accordingly, Heartland has not shown that Forest River can prove no set of facts in support of its claim against these as yet unpleaded defenses.[9]

---

[9] Since Heartland has introduced no admissible evidence at all to support critical elements of these defenses, and is not in compliance with Fed. R. Civ. P. 56 in that regard, this Rule 12(b)(6) motion cannot be "converted" into one under Rule 56.  Further, even as to a motion

3. Finally, Heartland accosts the unfair competition claim as being insufficient under the *Twombly* standard and as being pre-empted by the copyright laws. DE#10 at pages 12-13.

As to the first, Heartland is wrong as a matter of both law and fact. The pleadings in this regard, DE#4 at §21, allege that "Heartland has also engaged in unfair trade practices and unfair competition in connection with its publication of infringing advertisements and sale of infringing travel trailers." Form 19, §8 of the Federal Rules of Civil Procedure states in pertinent part: "The Defendant . . . has engaged in unfair trade practices and unfair competition in connection with its publication and sale of the infringing book." Thus the factual content of Forest River's allegation is virtually identical to that of the Form. Compliance with that form is sufficient to meet the Rule 12(b)(6) notice requirements as a matter of law. *Tamayo v. Blagojevich*, 526 F. 3d 1074, 1085 (7th Cir. 2008).

Further, the Forest River's pleadings provide even more factual information which supports an unfair competition claim. DE#4 at §15 states that: "Heartland distributed the advertisement of Exhibit 2 to potential customers . . . together with other advertisements of its MPG product which were intended to confuse and/or deceive customers into thinking about some connection with Forest River." The distribution of these other advertisements was, accordingly, "in connection with its publication of the infringing advertisements and sale of infringing travel trailers." As a point of

---

under Rule 56, it is often the case that substantial factual disputes arise with respect to application of the doctrines of merger, scenes a faire, and fair use. *See, e.g., Tensor Group, Inc., v. Global Web Systems, Inc.*, 1998 WL 887981 (N.D. Ill 1998)(copyright dispute over engineering drawings used to make gears - the Court studying the different ways the gears could have been depicted in technical drawings rather than copy the copyrighted drawings.

reference, Exhibit 9 is a copy of the cover of an example of the "other advertisement"[10]. Briefly, that other advertisement used the gecko logo of GEICO Corporation, a sister corporation to Forest River (both being owned by Berkshire Hathaway Corporation). GEICO and Forest River have engaged in extensive joint advertising of their products, including at the Louisville RVIA trade show of last December.

By coupling the copyright infringement with other misleading advertisements, Heartland is engaging in unfair competition. This Court has previously recognized that infringement of copyrights in floorplans coupled with other conduct that amounts to passing off is unfair competition which is not pre-empted by the copyright laws because of the "extra element of misrepresentation or deception which is not an element for copyright infringement." *Patriot Homes, Inc. v. Forest River Housing, Inc.,* 489 F. Supp. 2d 865, 875 (N.D. Ind. 2006). Further, "Indiana has held that the tort of unfair competition is much broader than simply the palming off of one's goods or services as that of someone else's, but includes actions for the interference with a contract or business relationship, as well as for predatory price cutting." *Patriot Homes, Inc. v. Forest River Housing, Inc.,* 2007 WL 2782272, *8 (N.D. Ind. 2007). In this latter case, the Court found that not only were the defendant's floor plans identical to the plaintiff's, the defendant was pricing its products for less money, pawning them off as the same as the plaintiff's for less.

---

[10] A complete color copy of this example of "other advertisement" currently exceeds the ECF filing capacity using the data compression means of the undersigned counsel, altough work is continuing to remove that limitation. In this case, depiction of color is considered necessary because the green on green format is a feature of the confusion. These days, "Going Green" usually refers to some aspect of the product which is environmentally responsible. However, in this case, the "Going Green" slogan on the advertisement is considered to trade off on the well known "green" of the GEICO gecko and the Forest River logos. In combination with the similar floor plans and features, an allusion is created to "Going Forest River."

13

In the present lawsuit, the pricing listed on Exhibit 2 to the Amended Complaint, the other advertisement noted in §15 of the pleadings, and even Heartland's arguments in the subject motion (which can be taken as a judicial admission) make it clear that Heartland was trying to do much the same thing: suggest that its products were the same as Forest River's, but somehow giving "more value." In the process, Heartland was also deceiving consumers into thinking there was some connection with Forest River.

Accordingly, Forest River has made out a plausible claim for unfair competition which is not pre-empted by the copyright laws on account of the additional elements, such as consumer deception, required by Indiana law.

Conclusions:

For the reasons stated above, none of Heartland's grounds for dismissal under Rule 12(b)(6) should be granted.

Dated: April 13, 2010

Respectfully submitted,

s/Ryan M. Fountain

_____
Ryan M. Fountain (#8544-71)
RyanFountain@aol.com
420 Lincoln Way West
Mishawaka, Indiana  46544
Telephone: (574) 258-9296
Telecopy: (574) 256-5137
Attorney for Defendant Forest River, Inc.

**Certificate of Service**

I certify that on April 13, 2010, I electronically filed the foregoing document with the Clerk of the

Court using CM/ECF system, which sent notification of such filing to all of the parties through at least the following counsel of record:

David P. Irmscher       david.irmscher@bakerd.com

                                                      s/Ryan M. Fountain
                                                    _____
                                                    Ryan M. Fountain
                                                    Attorney for Defendant Forest River, Inc.

## INDEX TO EXHIBITS

Exhibit 6    Jayco internet advertisement

Exhibit 7    Keystone internet advertisement

Exhibit 8    Heartland internet advertisement

Exhibit 9    Heartland trade show advertisement

## APPENDIX

Nimmer on Copyright, 2009, at §2.08[D][2][b]