## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| FOREST RIVER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:10-CV-11-TS |
| | ) | |
| HEARTLAND RECREATIONAL | ) | |
| VEHICLES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Forest River, Inc., and Defendant Heartland Recreational Vehicles, LLC, are

competitors in the travel trailer, or recreational vehicle (RV), market. The Plaintiff has sued the

Defendant over the Defendant's use of a drawing representing the floor plan of one of the

Plaintiff's RVs. The Plaintiff alleges that the Defendant copied the floor plan from the Plaintiff

in violation of federal copyright laws and used the drawing to engage in unfair competition. This

matter is before the Court on Defendant Heartland Recreational Vehicles, LLC's Motion to

Dismiss Plaintiff Forest River, Inc.'s Amended Complaint for Failure to State a Claim [ECF

No. 9], filed on March 26, 2010.

## BACKGROUND

On January 7, 2010, the Plaintiff filed a Complaint and on March 2 filed an Amended

Complaint asserting that the Defendant violated the copyright laws of the United States,

including Title 17, United States Code, § 101 et seq. The Plaintiff alleges that it is the exclusive

owner of a travel trailer floor plan entitled RP-176 (RP-176 Floor Plan or the Floor Plan), which

represents the layout of its R.Pod travel trailer. The RP-176 Floor Plan is attached to the

Amended Complaint as Exhibit 1. The Plaintiff alleges that the Defendant copied the RP-176 Floor Plan into its advertisements for a competing travel trailer, which the Defendant markets as the MPG travel trailer made by Heartland. The Plaintiff asserts that the Defendant's advertisement of its MPG product is "intended to confuse and/or deceive customers into thinking about some connection with Forest River." (Amd. Compl., ¶ 15.) A copy of the advertisement is attached as Exhibit 2 to the Amended Complaint. The Plaintiff alleges that the Defendant provided marketing material to dealers so that they could attempt to sell MPG travel trailers made by Heartland in competition with Forest River's R.Pod travel trailer, which has resulted in monetary gain to the Defendant and those dealers. The Plaintiff also alleges that the Defendant relied on unauthorized copies of the Plaintiff's Floor Plan to manufacture the MPG travel trailer. The Plaintiff claims that the Defendant's actions constitute infringement of a copyright and unfair trade practices and competition.

On March 26, the Defendant filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 9] and Memorandum in Support [ECF No. 10], arguing that both the Plaintiff's copyright infringement and unfair competition claims fail as a matter of law. The Defendant submits that, even if it used the technical drawing of the RP-176 Floor Plan to construct its MPG travel trailer, such use does not constitute copyright infringement. The Defendant further contends that the trailer itself cannot violate any copyright in the Plaintiff's R.Pod vehicle as an "architectural work" under the Architectural Works Copyright Protection Act because recreational vehicles are expressly excluded from the definition of architectural works that are subject to copyright protection. (Def.'s Mem. 2.) The Defendant justifies its inclusion of the RP-176 Floor Plan in its advertising on the ground that, because the use of the

Floor Plan is the limited practical method to accurately represent and compare the floor plans of the companies' competing products, the Floor Plan is not entitled to copyright protection. Additionally and alternatively, the Defendant maintains that its use of the Floor Plan in comparative advertising constitutes a non-infringing fair use. Regarding the Plaintiff's claim for unfair competition, the Defendant argues that the Plaintiff has failed to state a claim because unfair competition cannot be based on an allegation that another copied, revised, or used a copyrighted work.

On April 13, the Plaintiff responded [ECF No. 15] to the Defendant's Motion to Dismiss. The Plaintiff submits that the Defendant engaged in an act of infringement when it first copied the Floor Plan and then used the infringing copy or derivatives of the copy to manufacture a useful item, the MPG travel trailer. It maintains that the Defendant relies on factual conclusions that are not compelled by the record to assert defenses to the advertising, including the fair use defense, and that the Plaintiff has sufficiently pleaded a cause of action for unfair competition.

On April 23, the Defendant filed a Reply, asserting that the Plaintiff cited outdated and inapplicable case law, relied on argument that runs contrary to copyright law, applied the incorrect standard to determine the sufficiency of its Amended Complaint, and impermissibly attempted to plead additional facts that were not included in its Amended Complaint.

## DISCUSSION

### A.     Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. Requirements for stating a claim under the federal pleading standards are

straight forward. A pleading that states a claim for relief must set forth "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for relief sought." Fed. R. Civ. P. 8(a). In considering motions to dismiss for failure to state a claim, "[courts] construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "A plaintiff . . . must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Id.* at 1083 (quotation marks and citations omitted). Although a complaint does not need detailed factual allegations, it must provide the grounds of the claimant's entitlement to relief, contain more than labels, conclusions, or formulaic recitations of the elements of a cause of action, and allege enough to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950–51 (2009) "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.*

  The Seventh Circuit has provided the following summary of the lessons to be learned

from a recent series of the Supreme Court opinions on notice pleading and the Rule 12(b)(6)

standard:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts
> must accept a plaintiff's factual allegations as true, but some factual allegations
> will be so sketchy or implausible that they fail to provide sufficient notice to
> defendants of the plaintiff's claim. Third, in considering the plaintiff's factual
> allegations, courts should not accept as adequate abstract recitations of the
> elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). In addition, a plaintiff can plead itself out of

court if it would be necessary to contradict the complaint in order to prevail on the merits.

*Tamayo*, 526 F.3d at 1086.


**B.      Defining the Work Subject to Copyright Protection**

The Court assumes that the following is true for purposes of determining whether the

Plaintiff has stated a claim for copyright infringement: The Plaintiff created the RP-176 Floor

Plan drawing to represent the layout of its R.Pod travel trailer, and the Plaintiff is the owner of

all copyrights in the RP-176 Floor Plan. The Defendant created a copy of that drawing, and then

used the copy to manufacture its own MPG travel trailer. The Defendant also copied the drawing

into print advertising to compare the layout of its product with the Plaintiff's R.Pod travel trailer,

and this advertisement showed the competitors' trailers to have identical floor plans. The

Defendant reproduced, published, and distributed the advertisement to RV dealers for the

purpose of soliciting sales of its MPG product.

To prevail on a claim of copyright infringement, a plaintiff must prove "(1) ownership of

a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist

Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Incredible Techs. Inc. v.*

*Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005). The issue of copyrightability is an

issue of law for the court to decide. *Gaiman v. McFarlane*, 360 F.3d 644, 648 (7th Cir. 2004).

Graphic works, including technical drawings, are among the works that are eligible for

copyright protection. 17 U.S.C. § 102(a)(5). The Architectural Works Copyright Protection Act

of 1990 (AWCPA), amended the Copyright Act of 1976 to include architectural works as a

separate category from other technical drawings. *See* 17 U.S.C. § 102(a)(8). Now, the holder of a

copyright in architectural plans is entitled to two forms of protection under the Act. *See T-Peg,*

*Inc. v. Vermont Timber Works, Inc.*, 459 F.3d 97, 109 (1st Cir. 2006) (explaining that one who

creates an architectural work by depicting that work in plans or drawings will have two separate

copyrights, one in the architectural work (§ 102(a)(8)), the other in the plans or drawings (§

102(a)(5)). Architectural works are defined as:

> [T]he design of a building as embodied in any tangible medium of expression,
> including a building, architectural plans, or drawings. The work includes the
> overall form as well as the arrangement and composition of spaces and elements
> in the design, but does not include individual standard features.

17 U.S.C. § 101. Regulations implementing the Copyright Act, as amended by the AWCPA,

define the term "building" as "humanly habitable structures that are intended to be both

permanent and stationary, such as houses." 37 C.F.R. § 202.11(b)(2). Excluded from copyright

protection as an architectural work are "[s]tructures other than buildings, such as bridges,

cloverleafs, dams, walkways, tents, *recreational vehicles*, mobile homes, and boats . . . [and]

standard configurations of spaces." 37 C.F.R. § 202.11(d) (emphasis added). Thus, any of the

protections afforded specifically to architectural works are not pertinent to the Plaintiff's claims

in this lawsuit. The Plaintiff's Floor Plan is instead protected under § 102(a)(5) as a technical

drawing. The Floor Plan is afforded the same protection that was given to technical drawings

before the enactment of the AWCPA. *See* H.R. Rep. No. 101-735 at 19 (1990), reprinted in 1990 U.S.C.C.A.N. 6935, 6952.


**C.      Copyright Infringement**

**1.      *Manufacturing of the MPG Travel Trailer***

The Defendant argues that the Plaintiff has not stated a claim for copyright infringement with respect to the Defendant's use of copies of the Floor Plans to manufacture its MPG travel trailer. The Defendant asserts that even when a plaintiff holds a copyright in a graphic drawing of a useful article, others are not precluded from manufacturing and marketing the article itself. *Gusler v. Fischer* 580 F. Supp. 2d 309, 315 (S.D.N.Y. 2008); *see also Niemi v. Am. Axle Mfg. & Holding Inc.*, No. 05-74210, 2006 WL 2077590, at *3 (E.D. Mich. July 24, 2006) (holding that "the manufacture of a machine from a copyrighted technical drawing is clearly not copyright infringement"). This is known as the useful article exception. *See* 17 U.S.C. § 113(b) (limiting rights with respect to the making, distribution, or display of a useful article displayed in a copyrighted work); 17 U.S.C. § 101 (defining "useful article"). In response, the Plaintiff does not dispute that a recreational vehicle is a useful article or that copyright laws protect the manufacture of a useful article. Instead, it attempts to distinguish the facts here, contending that:

> [w]hile it may be true that the *mere* "manufacture of a useful article from a copyrighted technical drawing does not constitute copyright infringement," where, *instead*, the copyright in technical drawing is infringed by first copying that drawing and then the copy is used for the manufacture of a useful article, there is copyright infringement with respect to the useful article.

(Pl.'s Resp. 5, ECF No. 15.) The Plaintiff argues that this intermediate step is the "separate act of infringement" referred to in the foremost copyright law treatise, Nimmer on Copyrights, and

cites *Herman Frankel Organization v. Tegman*, 367 F. Supp. 1051, 1053 (D.C. Mich. 1973), and

*Robert R. Jones Associates, Inc. v. Nino Homes*, 858 F.2d 275, 280–81 (7th Cir. 1988), in

support of its claim. The Defendant counters that all of the authority cited by the Plaintiff in

support of this theory pertains exclusively to technical drawings depicting architectural works.

 The legal issue before the Court is whether a copyright in a technical drawing of a non-

architectural useful article precludes another party from using copies of that drawing to construct

the useful article. If the holder of a copyright in a non-architectural technical drawing is not

afforded such protection, then the Plaintiff's Amended Complaint has failed to state a claim for

infringement as it relates the Defendant's production of the MPG travel trailer.

 The Court is not inclined to recognize a distinction between using original copyrighted

technical drawings to build an RV and using duplicate copyrighted technical drawings to

construct an RV, with only the latter constituting copyright infringement with respect to the

finished product. To hold otherwise would be to elevate the Plaintiff's copyright to a patent.

Similar attempts to expand the scope of copyright protection to include the act of manufacturing

a non-architectural useful item using a derivative of the copyrighted drawing of that item have

failed. For example, in *National Medical Care, Inc. v. Espiritu*, 284 F. Supp. 2d 424, 435–36

(S.D. W. Va. 2003), the court found that copyrights in technical drawings depicting medicine

cabinets did not protect against production of the medicine cabinets, even though they had been

built using unauthorized copies of the plaintiff's technical drawings. The court held that

"[c]opyright protection only extends to as-built structures when the copyright is registered [as

'architectural work'] under the AWCPA," *id.* at 435, and that the protection affording to

drawings registered as technical drawings "does not extend to as-built structures, regardless of

8

whether those structures have been built with reference to infringing copies" *id.* at 435–36. *See also Niemi*, 2006 WL 2077590, at *3–4 (E.D. Mich. 2006) (holding that the use of copies, or derivatives of copies, of copyrighted technical drawings to manufacture a machine did not constitute an act of copyright infringement).

The Plaintiff does not persuasively explain why its technical drawing should receive greater protection than that afforded to the technical drawings in *Espiritu* and *Niemi*. The cases cited by the Plaintiff, *Robert R. Jones* and *Tegman*, specifically dealt with architectural structures. The courts in those cases awarded some relief to the plaintiffs on the grounds that the defendant was prohibited from constructing a home from the infringing use of copied plans. *Robert F. Jones*, 858 F.2d at 280; *Tegman*, 367 F. Supp. at 1054. These cases were decided before the AWCPA amendment, and appear to have been an attempt to make an exception for architectural works that would provide them expanded protection and fill a void in existing copyright laws. The AWCPA now extends copyright protection to as-built architectural works, but does not extend that protection to other useful articles. Recreational vehicles are specifically excluded from this extended protection, and the protection afforded the drawing of an RV is still qualified by the useful article limitation.

The sections of *Nimmer on Copyright* that the Plaintiff cites also pertain solely to architectural works, specifically to the protection afforded such works prior to the enactment of the AWCPA. (*See* Pl. Resp. App., *Nimmer on Copyright*, § 2.08[D][2], ECF Nos. 15-5 to 15-9.) A careful reading of the treatise reveals that the "separate act of infringement" it refers to is the copying of the technical drawing, not the building of a structure from the infringing copy. Indeed, Nimmer concludes that architectural structures themselves were afforded virtually no

protection prior to the AWCPA, and cites *Espiritu* as an example of the application of the "doctrine that a copyright for a work of utility protects only against copying of such works for purposes of explanation (e.g., the making of an unauthorized plan), but not against copying of such works for purposes of use (e.g., the construction of an unauthorized structure)." (*Id.*, ECF Nos. 15-8, 15-9.) The author surmises that pre-AWCPA drawings of architectural works would receive similar treatment.

The Court could locate no post-AWCPA decision that recognized the distinction the Plaintiff requests when referring to useful articles depicted in drawings protected under § 102(a)(5) as technical drawings. To the extent the Plaintiff's Amended Complaint attempts to assert a claim for copyright infringement on the basis that the Defendant manufactured travel trailers using copies of its Floor Plan, that claim fails as a matter of law. The Defendant was entitled to manufacture and market its own travel trailer, even one with the same layout as the Plaintiff's. However, because the Plaintiff's copyright protects the design drawing from being copied, and the Amended Complaint alleges that the Defendant created derivative Floor Plan drawings, it states a claim for copyright infringement as to the copies (as distinct from the actual trailer).

### 2. *Use of the Floor Plan in Comparative Advertising*

Copyright owners have the exclusive right to "reproduce," "prepare derivative works," "distribute copies," and "display" copyrighted work. 17 U.S.C. § 106. The Plaintiff alleges that the Defendant copied its drawing of the RP-176 Floor Plan in its advertisements for competing trailers, which is attached to the Amended Complaint as Exhibit 2. The Defendant argues that

even if it copied the Floor Plan, there was no infringement under the doctrines of merger and *scenes a faire*. Merger refers to the situation where there is only one feasible way of expressing an idea (in other words, there is a merger of the idea and its expression), so that if the expression were copyrightable, it would mean that the idea was copyrightable, and ideas are not copyrightable. *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 928 (7th Cir. 2003). *Scenes a faire* refers to the concept that a copyright owner cannot prove infringement by pointing to features of his work that are found in the defendant's work as well but that are so rudimentary, commonplace, standard, or unavoidable that they do not serve to distinguish one work within a class of works from another. *Id.* at 929; *see also Incredible Techs.*, 400 F.3d at 1012. This doctrine has been applied mostly in film, television, and video contexts. *Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1042 (8th Cir. 2003).

The Defendant argues that there are limited practical means available to represent the layout (or floor plan) of a travel trailer, and that the use of a two-dimensional drawing is the standard method of doing so. Thus, protection of a two-dimensional drawing in comparative advertising would, the Defendant argues, lead effectively to according protection to the idea itself. The Plaintiff counters that there are numerous ways to express the layout of an RV and posits that the Defendant could have compared layouts "by any number of types of photographs or by drawings" the Defendant made itself from an inspection of the actual trailers. (Pl.'s Resp. 8, ECF No. 15.) The Plaintiff notes that the drawings could have been set up as plan views or perspective views, and could have been made with color enhancements.

Without commenting on the relative merit of any of the Plaintiff's claims, the Court finds that merger and *scenes a faire* are affirmative defenses, or at least belong in a more detailed

discussion about copyrightability. *See* 4-13 *Nimmer* §§ 13.03[B][3], 13.03[B][4] (noting that there is some disagreement as to whether the doctrines of merger and *scenes a faire* figure into the issue of copyrightability or are more properly defenses to infringement). The dispositive question will be, not how many alternative methods of expression actually exist, but "whether other options practically exist under the circumstances." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 536 (6th Cir. 2004). Such an inquiry is not best undertaken in the context of a motion to dismiss for failure to state a claim and the Court will not dismiss the Amended Complaint on merger or *scenes a faire* grounds.

The Defendant also argues that its use of the Floor Plan in comparative advertising represented non-infringing "fair use." The fair use doctrine is an affirmative defense to a copyright infringement action. It confers a privilege to use copyrighted material in a reasonable manner without the owner's consent. *Hustler Magazine, Inc. v. Moral Majority*, 796 F.2d 1148, 1151 (9th Cir. 1986). The statute itself identifies the factors that a court must consider when determining whether the use made of a work is a fair one "for purposes of criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research." 17 U.S.C. § 107 (codifying the common law fair use doctrine). This nonexhaustive list of relevant factors, *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 549 (1985), are:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. Application of the statute and the doctrine requires a case-by-case analysis, and the burden of proof is on the copier. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577, 590 (1994).

Here, the purportedly infringing advertisement is entitled "MPG VS. R.POD." At the top of the page, it displays the floor plans of the MPG and R.Pod, and shows them to be identical. The drawings are the same size and nothing distinguishes them. The advertisement then lists the specifications and construction standards for each RV in side-by-side columns. The advertisement presents a breakdown of the cost of comparable standard packages for each trailer, concluding that the MPG and R.Pod cost the consumer the same amount of money. Finally, the advertisement lists thirteen "advantage[s]" of the MPG, and credits the R.Pod with only one advantage (a cargo plus netting with detachable organizer).

1.      *The Purpose and Character of the Use*

An advertisement for the sale of a product clearly has a commercial purpose. The statutory text relating to the different purposes and character of use highlights commercial and nonprofit educational purposes opposite each other. 17 U.S.C. § 107(1). However, the analysis is also guided by the examples given in the preamble to § 107, which include use for criticism or comment. *Campbell*, 510 U.S. 578–79; *id.* at 584 ("The language of the statute makes clear that the commercial or nonprofit educational purpose of a work is only one element of the first factor enquiry into its purpose and character."). The Defendant copied the Plaintiff's Floor Plan to compare to the Defendant's product and convince buyers to purchase their RV instead, not to pawn the Plaintiff's product off as its own. This is less exploitative in nature than the more

traditional types of a commercial use. *See, e.g., A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001) ("[C]ommercial use is demonstrated by a showing that repeated and exploitative unauthorized copies of copyrights works were made to save the expense of purchasing authorized copies."); *Batesville Servs. Inc. v. Funeral Depot, Inc.*, No. 1:02-CV-01011-DFH-TA, 2004 WL 2750253 (S.D. Ind. Nov. 10, 2004) (noting that the defendant, an unauthorized dealer of the plaintiff's caskets, simply copied images of the plaintiff's caskets and used them for precisely the same purpose for which plaintiffs originally developed them: to sell the products that appear in the photographs). However, what makes this analysis a potentially close call is that the product the Defendant advertises for sale is one for which the floor plan is represented to be exactly the same as that of the R.Pod.

In any event, more significant than whether the work is commercial in nature is whether the Defendant's use was "transformative:" "The central purpose of this investigation is to see . . . whether the new work merely supercedes the objects of the original creation, . . . or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell*, 510 U.S. at 579 (internal citations, brackets, and citations omitted). The Court considers whether the Defendant's use of the Floor Plan merely superceded the object of the originals or instead added a further purpose of different character. *Id.*; *cf. Nunezez v. Carribean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000) (holding that when a photograph that was intended to be used in a modeling portfolio was used instead in a news article the work was transformed into news).

The Defendant submits that the RP-Floor Plan, standing alone, provides only the dimensions and layout of the R. Pod. However, when combined with the other informative

elements of the Defendant's advertisement, the resulting work has a completely different meaning, namely, that although the competing travel trailers have the same dimensions and layout, the MPG provides over a dozen additional feature advantages for the same price. The Defendant argues that the transformative effect of its use of the Floor Plan weighs heavily in favor of a finding of fair use.

The Court does not agree that the Defendant's use was so clearly transformative. The most basic purpose of the Floor Plan is to show the layout of the travel trailer, including placement of useful features and dimensions. Presumably, the Plaintiff desired to show the layout of its travel trailer for various purposes, including informing the consuming public. The Defendant's use of the Floor Plan retained this same purpose. Merely adding information about its own trailer did not transform this use to something new or different. The Defendant cannot even argue that its use involves comment or criticism of the Plaintiff's Floor Plan because the Defendant used the same exact drawing to represent its own product. Moreover, the floor plan in the advertisement was a straight copy of the Plaintiff's Floor Plan. To represent the layout of the R.Pod, the Defendant copied the Floor Plan of the R.Pod exactly. The Defendant then used this same exact replication to portray the layout of the MPG trailer, even shading the same areas and using the same text and font to label different sections of its trailer.[1] Whether the two products indeed have the exact same layout and interior dimensions is not known to the Court at this stage of the proceedings. Based on the current record, and at this stage of the proceedings, the Court does not have sufficient facts to conclude that the Defendant created a new meaning or purpose

---

[1] This shading does not appear on Exhibit 1 to the Amended Complaint, which is a copy of the RP-176 Floor Plan created by the Plaintiff.

and did not, instead, supercede the Plaintiff's use of the copyrighted drawing.

The Defendant also submits that, because its advertisement allows consumers to make better-informed purchases, it is the type that courts have "consistently championed as beneficial to a free market society." (Def. Mem. 8–9, ECF No. 10.) The Fifth Circuit, in *Triangle Publications, Inc. v. Knight-Rider Newspapers, Inc.*, 626 F.2d 1171 (5th Cir. 1980), held that a reproduction of a *TV Guide* cover in comparative advertising was fair use. The court found that the first factor weighed in favor of the defendant, noting the public benefit of comparative advertising as a means of providing more information to the public. *Id.* at 1175–76. In *Sony Computers Entertainment America, Inc. v. Bleem, LLC*, 214 F.3d 1022 (9th Cir. 2000), the Ninth Circuit noted that the Federal Trade Commission has also commented on the social utility of comparative advertising:

> Comparative advertising, when truthful and nondeceptive, is a source of important information to consumers and assists them in making rational purchase decisions. Comparative advertising encourages product improvement and innovation, and can lead to lower prices in the marketplace.

*Id.* at 1027 (quoting 16 C.F.R. § 14.15(c) (1980)). The *Sony* court concluded that the defendant's comparative advertising using screen shots of the plaintiff's video games to show the look of video games' graphics on a television when played on a console as comparted to how they look on a personal computer screen when played using the defendant's product, redounded greatly to the purchasing public's benefit with very little corresponding loss to the integrity of the plaintiff's copyrighted material. *Id.*

The copyrightable material that was copied in the comparative advertising in the two above-cited cases was copied for the purpose of distinguishing between two products. Here, the Defendant's portrayal of the layout of its RV is indistinguishable from the layout of the

Plaintiff's product. Thus, the Defendant's reproduction of a product with the same layout (as opposed to one that it champions as superior) is not as likely to encourage product improvement and innovation in response. The Plaintiff also argues that whether copying its Floor Plan truthfully informs the public depends on whether the MPG product is indeed the same as the R.Pod, such that they can be truthfully represented by the same Floor Plan. The Plaintiff has made no allegation in its Amended Complaint that the two products do not indeed have the same layout. However, the advertisement itself lists different dimensions for the height, length, and cargo capacity of the trailers without any corresponding difference is the pictured floor plans. With so many details relevant to this factor yet unknown, the Court cannot assign a weight to this factor of the fair use doctrine.

2.      **The Nature of the Copyrighted Work**

Works that are creative in nature are closer to the core of intended copyright protection than are more fact-based works. *Campbell*, 510 U.S. at 586; *Harper & Row Pubs v. Nation Ents.*, 471 U.S. 539, 563–64 (1985); *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1016 (9th Cir. 2001). The Defendant asserts that the RP-176 Floor Plan is a product of low creativity and is a mere compilation of facts because is records the placement of elements and features of the R. Pod.

In its Amended Complaint, the Plaintiff alleges that the Floor Plan was based upon prior floor plans and travel trailers, but added original material, including a kitchen slide-out, entertainment center, storage bunk sections, and orientation and sizing of all the RV's sections. The purpose of the Floor Plan was, presumably, to show the manufacturer how to build the

product and to inform dealers and consumers about the product, which is arguably a very functional purpose. The Plaintiff argues that the drawings are creative because they are not within the ability of an average person to create instantly. At least some of the RP-176 Floor Plan was based upon prior floor plans and trailers. How much creativity was required to create the new aspects, including the orientation and sizing, is unknown. The level of creativity expended in creating the Floor Plan drawing is not a determination that can be made at the pleading stage.

The fair use doctrine is more likely to apply to published works. *Harper & Row*, 471 U.S. at 553 (noting that the concern with an unpublished work is allowing the author to have the right to control the first public dissemination of his work, and that this outweighs any claim of fair use). The Plaintiff alleges in the Amended Complaint that the Floor Plan was published as part of a contribution to a larger work entitled "R.Pod Proudly Introduces Two Exciting 'New' Floorplans!!!" (Am. Comp. ¶ 9.) However, it is not known from the pleading whether this publication was to the consuming public or to dealers and others within the industry. Given the procedural posture of this case, the Court is unable to determine whether this factor weighs in favor of either party.


3.      ***The Amount and Substantiality of Portion Used***

The Supreme Court has stated that

[t]he third factor asks whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," § 107(3) (or, in Justice Story's words, "the quantity and value of the materials used,") are reasonable in relation to the purpose of the copying. . . . [T]he extent of permissible copying varies with the purpose and character of the use.

*Campbell*, 510 U.S. at 586–87 (internal citations omitted). There is no per se rule against copying a work as a whole if that is necessary for the fair use. *Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003).

This factor does not weigh for or against either party. It is unknown whether the Defendant's copying was for the same intrinsic purpose for which the Plaintiff intended to use the Floor Plan since the Amended Complaint is silent as to what degree the Plaintiff used the Floor Plan drawing in its own advertising to consumers. Thus, although the Defendant copied the Floor Plan as a whole, it may have been reasonable to do so to accurately portray the layout of the trailers. If the Defendant had only copied a portion of the Floor Plan, it would have been difficult for consumers to compare the layout of the interior spaces of each product. Because there are too many unknown facts to determine whether the purpose and character of the use tends toward fair use, the extent of the permissible use is likewise unknown.

4.      *Effect of the Use Upon Potential Market For or Value of Copyrighted Work*

The United States Supreme Court has stated that this factor is "the single most important element of fair use." *Harper & Row Pubs., Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985). The focus of this factor is whether the new work will be a market substitute for the copyrighted material. *Campbell*, 510 U.S. at 591. The court must consider "not only the extent of the market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market.'" *Id.* at 590 (quoting 3 Nimmer & Nimmer, *Nimmer on Copyright* § 13.05[A][4], at 13-102.61).

The relevant market is the market for "the copyrighted work," 17 U.S.C. § 107(4), which in this case is the RP-176 Floor Plan. But the Floor Plan does not, itself, have a market or any value that was impacted by the Defendant's use. The Plaintiff does not purport to be in the business of selling RV floor plans, but to be in the business of "manufacturing and selling travel trailers." (Am. Compl. ¶ 12, ECF No. 4.) Moreover, manufacturers of travel trailers would not be required to obtain a license to use any of the ideas portrayed in the drawing, so it does not have value for obtaining licenses for the creation of derivative works or useful items. The Plaintiff's argument that the Floor Plan has value, as shown by the fact that the Defendant used it instead of creating its own drawing, does not address how the Defendant's use of the drawing diminished this value. In fact, copying cannot be both the measure of value and evidence of a decrease in value, or no use could ever constitute a fair use. The Plaintiff alleges in its Amended Complaint that the advertisement resulted in monetary gain for the Defendant. (Am. Compl. ¶ 19.) This gain, presumably, was in the form of sales of the MPG trailer that the Plaintiff contends would have been for their R. Pod. But any allegation that the advertisement had the effect of causing customers to purchase an MPG instead of an R.Pod, resulted from the nature of the advertising itself and from commercial competition with an independently created work (the RV itself), and not from the fact that a copy of the Floor Plan was used.

The Floor Plan of an RV is not a substitute for the RV itself, and the Defendant's use of the Floor Plan did not usurp the demand for the original work or compete in any way with the original. The Plaintiff cannot show damage to a non-existent market, and it has alleged no facts from which it can reasonably be inferred that the value of its Floor Plan has been diminished. Accordingly, this factor weighs in favor of finding that copying the Floor Plan in the

comparative advertising was a fair use of the copyrighted drawing.

**5.**     ***Balancing of Factors***

Applying the four factors specified in 17 U.S.C. § 107, the Court cannot determine at the pleading stage whether the Plaintiff has failed to state a plausible claim for relief on grounds that the affirmative defense of fair use applies to the comparative advertising that forms the basis of the Plaintiff's claim for copyright infringement. For the first factor, the Court concludes that the use of the Plaintiff's Floor Plan in comparative advertising is not transformatively different from the original purpose of the Floor Plan, but that the weight of this factor cannot be fully appreciated without further development of the record. The second factor may weigh in favor of fair use because the work is more factual and less creative, although a more developed record regarding the process of creating the Floor Plan may impact this factor. The Floor Plan was copied in its entirety, but such use may have been necessary depending on the purpose of the copying. Finally, the pleadings support the conclusion that the Defendant's use does not harm the market for the copyrighted material or reduce its value, but this factor could still be outweighed by others. Because the Plaintiff has not pleaded itself out of court by alleging facts that establish the existence of the fair use defense, dismissal is not appropriate. *See United States Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003) (stating that although a litigant may plead itself out of court by alleging the ingredients of an affirmative defense, complaints need not anticipate or attempt to defuse potential defenses). Going forward, the Defendant will have the burden of proof on the fair use affirmative defense.

**C.      Unfair Competition and Unfair Trade Practices**

In its Amended Complaint, the Plaintiff alleges that the Defendant has engaged in "unfair trade practices and unfair competition in connection with its publication of infringing advertisements and sale of infringing travel trailers." (Am. Compl. ¶ 21.) This statement is a legal conclusion that must be supported by a sufficiently plausible factual basis to state a claim for upon which relief may be granted. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). Documents attached to a complaint may permit a court to determine that the plaintiff is not entitled to judgment. *Id.* (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009)).

The factual allegation that the Plaintiff points to in support of his claim for unfair competition is that the Defendant distributed copies of the comparative advertisement containing the derivative Floor Plan to potential customers, "which were intended to confuse and/or deceive customers into thinking about some connection with [the Plaintiff]." (Am. Compl. ¶ 15; Ex. 2.) The Plaintiff does not identify the "connection" that it fears consumers would draw. The advertisement, on its face, is a comparison of the R. Pod and MPG trailers as distinct products.

The Plaintiff does not identify the statutory source for its claim. Section 43(a) of the Lanham Act prohibits activity such as trademark infringement that deceives consumers and impairs a producer's goodwill. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 32 (2003); 15 U.S.C. § 1125(a)(1)(A) (making a person liable in a civil action if he makes a misrepresentation which is likely to cause confusion as to the "origin . . . of . . . his or her goods"); 15 U.S.C. § 1125(a)(1)(B) (making a person liable in a civil action if he makes a misrepresentation of the "nature, characteristics, qualifies, or geographic origin of his or her . . .

22

goods"). But the Plaintiff has not alleged that the Defendant infringed on any source-identifying mark, name, or symbol, or that the Defendant attempted to pass the R. Pod off as an MPG trailer or create confusion as to the source of the MPG trailer. The comparison advertisement clearly identifies MPG and R.Pod as competing products, and the Plaintiff has not alleged any fact from which it can be inferred that the comparison is misleading. Thus, the Plaintiff has not set forth a plausible Lanham Act claim.

The Plaintiff may have intended to assert the common law tort of unfair competition on the basis of the advertisement. *See Keaton v. Keaton*, 842 N.E.2d 816, 820 (Ind. 2006) (noting some of the subspecies of common law unfair competition including passing off, trade name infringement, and use of confusingly similar corporate, business, or professional names); *Flesher v. Univ. of Evansville*, 755 N.E.2d 589, 598 (Ind. 2001). However, the factual allegations in the Amended Complaint are too sketchy to provide the Defendant with sufficient notice as to the claim the Plaintiff is making. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (noting that even though courts must accept the plaintiff's factual allegations as true, "some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim"). Although the Plaintiff alleges that the advertisement was intended to "confuse and/or deceive customers into thinking about some connection with [the Plaintiff]" (Am. Compl. ¶ 15), there are no facts from which it can be inferred that the "connection" provoked by the advertisement extended beyond that of market competitors attempting to sell a similar product. The Plaintiff has not identified the specific facts that ground his claim of unfair competition, and the Defendant's Motion to Dismiss this claim will be granted.

**CONCLUSION**

For the foregoing reasons, the Defendant's Motion to Dismiss [ECF No. 9] is GRANTED IN PART AND DENIED IN PART. The claim for copyright infringement with respect to the Defendant's manufacture of a competing trailer and the claim for unfair trade practice and unfair competition are DISMISSED. Pursuant to the Magistrate Judge's April 30, 2010, Order [ECF No. 18], the parties are to submit a joint status report within two weeks of the issuance of this Opinion and Order.

SO ORDERED on November 10, 2010.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION